UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————
                                              )
BUNNIE M. GASPERINI,                          )
                                              )
                Plaintiff,                    )
                                              )      Civil Action No. 10-11246-JCB
v.                                            )
                                              )
DOMINION ENERGY NEW                           )
ENGLAND, INC.,                                )
                                              )
                Defendant.                    )
———————————————————)

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

June 25, 2012

Boal, M.J.

  Plaintiff Bunnie M. Gasperini ("Gasperini") alleges violations of M.G.L. c. 151B

("Chapter 151B") and Title VII of the Civil Rights Act ("Title VII") by her former employer

Dominion Energy New England, Inc. ("Dominion").[1]  Gasperini alleges that Dominion

discriminated against her on the basis of her gender.

  On August 20, 2010, the parties consented to the exercise of jurisdiction by a United

States Magistrate Judge for all purposes.  (Docket No. 9).  Dominion has moved for summary

judgment on all of Gasperini's claims.[2]  For the following reasons, this Court GRANTS the

motion.

---

[1] Gasperini had also brought claims under the Massachusetts Civil Rights Act.  Those claims were dismissed by this Court on December 23, 2010.  (Docket No. 15).

[2] Gasperini's complaint, at times, makes rambling allegations.  However, both sides agreed that, if granted, Dominion's motion would dispose of the entire case.

I.      **PROCEDURAL BACKGROUND**

On or about April 14, 2010, Gasperini filed this case in the Massachusetts Superior Court for Bristol County.  (State Court Record, Docket No. 5, at 6-19).  Gasperini filed an amended complaint on July 1, 2010.  Id. at 21-29.  On July 26, 2010, Dominion removed the case to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1441(b).  (Docket No. 1).

On August 20, 2010, Gasperini moved to remand the case to state court.  (Docket No. 8). Dominion opposed Gasperini's motion to remand and moved to dismiss Counts III and IV of the Complaint on September 3, 2010.  (Docket No. 10).  This Court denied the motion to remand and granted Dominion's motion to dismiss Counts III and IV of the Complaint.  (Docket No. 15).

Fact discovery ended on January 31, 2012.  (Docket No. 29).  Expert discovery ended on April 6, 2012.  (Docket No. 31).

On May 8, 2012, Dominion filed the instant motion for summary judgment.  (Docket No. 32).  Gasperini filed her opposition on June 5, 2012.  (Docket No. 37).  The Court heard oral argument on June 20, 2012.

II.     **FACTS**[3]

A.      <u>Gasperini's Position And Duties</u>

Dominion operates a power plant in Somerset, Massachusetts, known as Brayton Point Station ("Brayton Point"), where Gasperini worked.  PR 2.[4]  The Brayton Point plant was originally owned by New England Power Company ("NEP") when Gasperini began her employment there.  PR 3.  In 1995, US Generating Company ("USGen") bought Brayton Point from NEP.  PR 4.  In 2005, Dominion purchased Brayton Point from USGen.  PR 5.

Gasperini was originally hired as janitor and laborer by NEP at Brayton Point in June 1989.  PR 6.  Gasperini was a member of the Utility Workers Union of America, Local 464 (the "Union").  PR 7.

In 1991, Gasperini filed a lawsuit alleging discrimination against NEP, the Union, two managers at NEP and eleven coworkers at NEP.  PR 8.  That lawsuit resulted in a settlement in February 1995.  PR 10.

In the early 1990s, Gasperini was out of work on disability leave for approximately two

---

[3] The facts, unless otherwise noted, are undisputed and are derived from Dominion's statement of undisputed facts, Gasperini's responses and Gasperini's statement of disputed facts. (Docket Nos. 33, 38, 45).  Because this case is before the Court on a motion for summary judgment, the Court sets out any disputed facts in the light most favorable to Gasperini, the non-moving party.  <u>See</u> <u>DeNovellis v. Shalala</u>, 124 F.3d 298, 302 (1st Cir. 1997).  However, as noted below, Gasperini cannot create an issue of fact without citing to competent evidence of record. <u>See</u> <u>Hidalgo v. Overseas Condado Ins. Agencies, Inc.</u>, 120 F.3d 328, 338 (1st Cir. 1997). Similarly, she may not create a factual dispute by contradicting her own deposition testimony. <u>See</u> <u>Morales v. A.C. Orssleff's EFTF</u>, 246 F.3d 32, 34-35 (1st Cir. 2001) (issues of fact may not be created by submitting an affidavit that contradicts affiant's deposition testimony).

[4] "PR __" refers to the paragraph numbers in the Plaintiff, Bunnie M. Gasperini's Consolidated Statement of Facts Pursuant to Scheduling Order, dated February 8, 2012 (Docket No. 45).

years.  PR 9.  When she returned from leave, she bid on and was granted a position as a conveyor operator in the fuel handling department at Brayton Point.  Id.

Gasperini remained employed at Brayton Point after Dominion purchased the plant in 2005.  PR 14.  At all relevant times, Gasperini was employed by Dominion as a fuel handler and assigned to the 3:00 p.m. to 11:00 p.m. shift.  PR 15.  As a fuel handler, Gasperini could be assigned to one of three tasks: conveyor up, conveyor down, and dozer operator.  PR 16.

A person assigned to conveyor up monitors the conveyor system on the top end, in the "powerhouse" or main plant where it is to be burned.  PR 19.  A worker assigned to conveyor down ensures that everything is operating properly while coal is being transferred on the conveyor belt from beneath the coal pile to the power plant where it will be burned.  PR 18.  She is also responsible for checking tanks in the back of the property and looking for coal fires.  Id. A person working conveyor down has regular access to a pickup truck to use as needed.  Id. Finally, a dozer operator is responsible for pushing coal into chutes beneath the coal pile, ensuring that silos are full of coal.  PR 17.  The coal then lands on a conveyor belt.  Id.

During the time Gasperini worked for Dominion as a fuel handler, she spent approximately 60% of her time on conveyor up, 30% of her time on dozer, and 10% of her time on conveyor down.[5]  DS 20.[6]

_____

[5] Gasperini disputes this fact on her response to Dominion's statement of undisputed facts.  However, this statement comes from Gasperini's own deposition testimony.  Gasperini Dep. I, 36.

[6] "DS __" refers to the paragraphs of the Defendant's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment (Docket No. 33).

B.     Dominion's Alleged Discriminatory Acts Against Gasperini[7]

1.     *Access To Bathroom And Locker Facilities*

Gasperini had a locker in the women's locker room at the powerhouse from approximately 1989 to 1995.  PR 79.  She never complained about the locker room during that period of time.  Id.  During that time, Gasperini shared her locker room with approximately seven female coworkers.  PR 80.

During that same time period, Gasperini ate her lunch in a lunchroom inside the powerhouse.  PR 81.  That lunchroom is still there.  Id.  The lunchroom contains tables, chairs, sinks, refrigerators, vending machines, microwaves and toasters and it is open to all employees.  Id.  The lunchroom is larger than the eating area in the men's fuel handler locker room.  Id.

In 1995, when she became a fuel handler, Gasperini moved to a locker room in the engineering trailer.  PR 82.  Initially, Gasperini shared that locker room with two other women.  PR 83.  That locker room had two sinks, two toilets, three shower stalls, and approximately thirty lockers.  Id.  Gasperini used four lockers in the locker room.  Id.  By 2006, Gasperini was the only woman in her shift and she did not share the locker room with anyone.  PR 84.  The engineering trailer had an eating area, so Gasperini started eating there.  PR 86.

At all relevant times, men's and women's locker facilities were kept separate.[8]  PR 89.

_____

[7] In the Complaint and her opposition papers, Gasperini references a number of events that occurred during her employment at Dominion.  At oral argument, however, Gasperini clarified that she alleges that only the incidents described in this section constituted discriminatory acts and form the basis of her claims against Dominion.

[8] Gasperini acknowledges that it was appropriate for men and women to have separate locker facilities and that both men and are women are entitled to privacy when they are changing clothes.  PR 89.

The male fuel handlers' locker room, which was located closest in proximity to the fuel handlers' work site, had an eating area inside.  PR 87.  The eating area in the men's locker room was larger than the eating area in the engineering trailer.  PR 88.  The eating area in the men's locker room is not physically separate from the locker area and the view of the lockers is in no way obstructed.  PR 90.  Men regularly change their clothes in the locker area, which can be viewed from the lunch area.  PR 91.

Between 1996 and 2006, Gasperini ate her meals in the eating area of the engineering trailer approximately 80% of the time.  PR 92.  The remaining 20% of the time, Gasperini ate in the men's locker room, although females were not allowed there.  PR 93.  Gasperini alleges that she was told that she would be fired if she was caught eating in the men's locker room. PR 93.

Gasperini complains about her inability to eat in the men's locker room.  Gasperini was the only female on her shift.  PR 87.  Her coworkers would all take their meal breaks together at the same time in the male locker lunch area.  Id.  Because she was the only female worker during her shift, Gasperini would have to eat alone unless she ate in the men's locker room.  Id.; PR 93.  Gasperini takes the position that by virtue of placing an eating area in the men's locker room, Dominion created a "male-only" lunch room, which caused her to be excluded from meals with her coworkers.  PR 95.  In addition, she alleges that the employee coffee club and Gatorade were located in the men's locker room and that Dominion periodically provided catered meals in the men's locker room.[9]  PR 97.

Despite being told that she was not allowed to eat in the men's locker room, Gasperini

_____

[9] It appears that the "catered meals" Gasperini refers to consisted of food that contractors would leave for Dominion employees.  See Docket No. 35-5 at 46.

would sometimes ask her co-workers if she could join them during their meal breaks and would eat with them.  PR 101.  If a male coworker needed to use the bathroom or change, Gasperini would leave.  PR 97.  Although she was never formally disciplined for eating in the male locker room, when she ate there she did so "under threat of being fired."  PR 101.

In May 2006, Dominion decided to close the engineering trailer locker room.  PR 102. Dominion states that it did so in order to save money.  DS 102.  Gasperini alleges that her access to the engineering trailer locker room was cut abruptly and without explanation.[10]  PR 102.

The women's restroom in the engineering trailer remained open for use during the day. PR 104.  However, the door was locked around 3:00 p.m., the start of Gasperini's shift.  PR 104.

After the engineering trailer locker room was closed, Gasperini was reassigned to the locker room in the first floor of the powerhouse.  PR 105.  This was the same locker room Gasperini had from 1989 to 1995, when she was not working as a fuel handler.  Id.  The powerhouse was approximately 250 feet away from the coal pile, Gasperini's work site.  PR 105.

The locker room in the powerhouse had two sinks, two showers, two toilets and approximately twenty lockers, of which Gasperini used four or five.  PR 106.  Unlike during 1989 through 1995 when Gasperini shared the locker room with approximately seven other women, as of May 2006 she shared it only with three women, all of whom were day shift employees who might have been there finishing up when Gasperini arrived for her shift.  PR 106.  During her shift, Gasperini had the locker room to herself.  Id.  On a per worker basis, the

---

[10] Although Gasperini states that she disputes Dominion's given reasons for closing the engineering trailer locker room, she has not provided any evidence to dispute that claim.  She cites her supervisor's testimony that "it was solely his brainstorm of an idea to close the locker room in order to save on having to clean an additional locker room."  PR 102.  That testimony is consistent with Dominion's stated reasons.

powerhouse women's locker room is larger than the men's locker room.  PR 107.  The powerhouse women's locker room also had a small eating area, although Gasperini was not required to eat in that room.  PR 109.

Gasperini complained that the bathroom in the powerhouse locker room was too far from her work station.  PR 105; PS 34.[11]  Gasperini states that she suffers from a chronic bladder condition that caused frequent and urgent need to urinate, necessitating close access to a bathroom facility.  PS 36.

In May 2006, Gasperini sent a letter to OSHA complaining about safety concerns with the powerhouse locker room, including that it was too cold, no working exhaust fan, faulty air conditioning, lack of safe exit and no hot water.  PR 110.  Gasperini also complained that the bathroom in the powerhouse locker room was too far from her working area.  Id.  OSHA informed Gasperini that all employees should have access to a restroom in their immediate work area.  PR 111.  In response, Dominion gave Gasperini a key to the supervisor's locker room and restroom, which is adjacent to the coal pile.  Id.  Gasperini alleges that this made her uncomfortable because she feared that a male supervisor could walk in at any moment while she was showering.  Id.  Dominion states, and Gasperini does not dispute, that for a majority of Gasperini's shift, no supervisors were on site to use the locker room.  DS 114.

The supervisor's locker room also had a unisex bathroom facility.  PR 113.  There was a unisex sign on the door.  Id.  The bathroom also had a cabinet with female sanitary products.  Id.

---

[11] "PS __" refers to Plaintiff's Statement of Disputed Material Facts of Record (Docket No. 38).

The supervisor's bathroom was used by a female supervisor, Paula Cabral.  PR 113.[12]

      2.     *The Bulldozer Incident Of November 19, 2006*

On or about November 19, 2006, Gasperini was assigned to the bulldozer operator position.  PR 35, PS 56.  The coal pile that day was high.  PR 35, PS 59.  That night, there was a ship dumping coal.  PR 35, PS 60.  The ship, ATLAS, was known to be a fast dumping ship.  PR 35, PS 61.  Gasperini maintains that it is generally known that bulldozer operators do not like for the coal pile to get high, especially when a ship was dumping coal.  PR 35, PS 60.

Gasperini felt that she could not keep pace with the ATLAS dumping the coal.  PR 35, PS 62.  She called her supervisor, George Affonso, and told him that she believed the pile was too high and she could not keep up with the bulldozer.  Id.  She felt unsafe because there was "insufficient space atop for her to safely negotiate the bulldozer without assistance."  Id.

Gasperini also called the ATLAS every fifteen minutes to request that it stop dumping, but received no response.  PR 35, PS 63.  In addition, Gasperini called for back-up assistance, but obtained no response.  PR 35, PS 65.  Accordingly, Gasperini decided to come down off the pile because she feared for her safety.  PR 35, PS 67.

Gasperini alleges that Mr. Affonso berated and belittled her for not being able to negotiate the pile and sent her home.  PR 35, PS 68.  Gasperini alleges that no one else had been sent home for raising safety concerns.  PR 35, PS 72-73.

In response to the incident, Karen Kinder, Dominion's Senior Human Resources Generalist, met with Gasperini and investigated the incident.  PR 36.  Dominion alleges that

---

[12] Once again, although Gasperini disputes the statements in this paragraph, the evidence cited by her does not contradict these facts and, indeed, she admitted them during her deposition. DS 113.

Kinder concluded that Gasperini should have been able to operate the bulldozer under the conditions that night.  DS 36.  Gasperini disputes Dominion's finding regarding the incident and alleges that Kinder screamed at her during the meeting.  PS 77.

Shortly after the incident, Gasperini was assigned to a day shift for one week so that her supervisors could observe her operation of the bulldozer.  PR 37.  At the end of the week, her supervisors concluded that she had all of the experience, training, and competence that she needed to operate the dozer.  PR 37.  Gasperini claims that she was upset about having to be observed operating the bulldozer in front of her coworkers and that the experience was belittling. PS 82.  On January 25, 2007, Dominion issued a non-disciplinary memorandum to Gasperini informing her of the conclusion of the investigation.  PR 38.

Gasperini maintains that she suffers from post-traumatic stress disorder that was exacerbated by the incident.  PR 37.

Gasperini filed a grievance over the non-disciplinary memorandum.  PR 39.  Gasperini did not win her grievance.  Id.

   3.   *August 2007 Employment Decision Day*

On or about August 3, 2007, Gasperini was suspended and ordered to take an Employee Decision Day after she refused to provide identification to a security guard.  The circumstances surrounding the incident are disputed by the parties.  Dominion claims that on July 19, 2007, Gasperini was stopped by a security officer, Greg Lewis, when she and coworker Duarte were driving past the coal pile during her lunch break.  DS 52.  The security officer asked them to identify themselves, which Gasperini repeatedly refused to do.  Id.  Eventually, Gasperini decided to drive off without Lewis's permission and without complying with his requests.  Id.

Gasperini claims that at the time of this incident, security guards were not in the practice of stopping workers for identification.  PR 52.  This was a brand new procedure that she was not informed about.  Id.  She alleges that she only drove off after she and her coworker were identified.  Id.  Gasperini does not dispute that the day after the incident, she came to work in a hand-created t-shirt that said, "My name is Bunnie."  PR 53.

On August 3, 2007, Dominion issued her a one-day, paid disciplinary Employment Decision Day.  PR 61.  Gasperini grieved this discipline.  PR 55.  She lost her case at arbitration. Id.

On August 10, 2007, Gasperini filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD"), complaining about the warnings she had received and about the "final warning" she received on August 3, 2007.  PR 56.  Gasperini alleged that the discipline was motivated by retaliation based on her 1991 lawsuit against NEP. Id.  The charge was ultimately dismissed by the MCAD for lack of probable cause.  PR 57.

In connection with an Employment Decision Day, an employee is required to fill out a questionnaire that constitutes an action plan for going forward with employment (the "Action Plan Questionnaire").  PR 60.  Gasperini was supposed to meet with her supervisor, Antero Oliveira to discuss her Employment Decision Day on August 4, 2007.  PR 62.  She called out sick that day and remained out sick until September 2, 2007.  PR 62.

When Gasperini submitted her Action Plan Questionnaire to Oliveira on September 2, Oliveira informed her that her answers were unacceptable.  PR 63.  Gasperini claims, however, that her first draft was written with the assistance of her union representative, Michael Alexander, who thought the answers were acceptable.  PR 63.

Gasperini submitted another version of her answers on September 4, and Oliveira informed her that those answers also were not acceptable.  PR 64.  Gasperini claims that version was written after consulting with union legal counsel.  Id.   She revised her answers a total of five times before Oliveira accepted the questionnaire on September 4, 2007.  Id.  Dominion takes the position that the answers were not acceptable because she failed to take accountability for her actions.  DS 65.  Gasperini, on the other hand, claims that Oliveira did not like her responses until she wrote exactly what Oliveira wanted her to write.  PR 65.

       4.     *The September 4, 2007 Truck Incident*

The same day that Gasperini submitted her Action Plan Questionnaire, the truck that Gasperini was assigned to use while working conveyor down was filled with diesel, instead of gasoline.  PR 67.  Gasperini does not dispute that she filled the vehicle's fuel tank during her shift on the night of September 4.  PR 68.  However, she disputes that she was the only person with access to the truck on that date.  PR 67, 69-70.

The fuel pump showed that three gallons of diesel fuel were dispensed that evening under false vehicle and department numbers.  PR 72.  The mechanic conducting repairs on the truck detected the odor of diesel fuel.  Id.  A laboratory test later showed that approximately three gallons of diesel fuel had ben put in the truck.  Id.  The diesel fuel caused the fuel pump and the fuel filter to fail and replacing those parts cost more than one thousand dollars.  PR 73.

David Seals from Dominion Security investigated the incident.  PR 74.  Seals interviewed Gasperini and her whole department during the investigation.  Id.  However, Gasperini claims that she was interrogated in an intimidating and forceful manner for five hours, while other coworkers were questioned for only two to three hours.  Id.  Gasperini alleges that she suffered

from chest pains, shortness of breath, an increase in the need to urinate, panic episodes, and general feelings of helplessness, of being unsafe at work, and feelings of being set up.  PR 75.

Dominion ultimately determined that it could not conclude that Gasperini had put the diesel into the truck and she received no discipline for the incident.  PR 76.

On October 11, 2007, Gasperini filed a charge with the MCAD, alleging that the company had retaliated against her for filing the August 10, 2007 charge by investigating her for the diesel fuel incident.  PR 77.  The MCAD dismissed that charge for lack of probable cause. PR 78.

C.      Gasperini's Disability Leave And Termination

On September 24, 2007, Gasperini went out on leave related to stress from work.  PR 118.  Under the Union contract, an individual can remain on short-term disability ("STD") for a total of twenty-six weeks.  PR 119.  After STD benefits expire, an employee may apply for long-term disability ("LTD").  PR 120.  If an employee is approved for LTD benefits, the Union contract stipulates that she may remain an employee on LTD only for 24 months.  PR 121.  The Union contract states that at the end of 24 months of LTD, "an employee's employment is terminated," although LTD benefits can continue if the employee remains disabled and continues to qualify for benefits under the terms of the plan.  Id.

Gasperini was on leave for 30 months of STD/LTD and did not return to work, so her employment with Dominion was terminated on March 30, 2010.  PR 126.  Gasperini continues to collect LTD benefits.  PR 127.

III.    ANALYSIS

Gasperini originally raised the following claims against Dominion: (1) hostile work environment, (2) disparate treatment on the basis of her gender; and (3) retaliation.  At oral argument, Gasperini clarified that she has abandoned the hostile work environment[13] and retaliation claims, including any claims based on a Voluntary Separation Program that Dominion instituted in early 2010.[14]  For the following reasons, the Court finds that Gasperini has failed to produce sufficient evidence to raise a triable issue of fact with respect to the remaining disparate treatment claims.

A.    Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996) (quotations and citations omitted).  A material fact is one which has "the potential

_____

[13] In any event, Gasperini's hostile work environment claim would have failed.  From an objective point of view, Gasperini did not produce any evidence from which a trier of fact would reasonably conclude that Dominion created an environment that was so severe or pervasive that it created a hostile working environment.  See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993) (In order to succeed in a hostile work environment claim, conduct must be such that (1) a reasonable person would consider the work environment hostile or abusive and (2) the subject of the treatment must have perceived it as such).  In describing a number of separate events, Gasperini fails to point to any incidents that were either sufficiently related or frequent in nature to establish severe and pervasive harassment on the basis of her gender.

[14] Similarly, Gasperini's retaliation claims would not have survived summary judgment.  Gasperini failed to point to any adverse employment action taken as a result of protected activity.  In addition, Gasperini has not satisfied the necessary administrative prerequisites prior to filing her claims regarding the Voluntary Separation Program.

to affect the outcome of the suit under the applicable law." <u>Id.</u> (quotations and citations omitted).

The moving party bears the initial burden of establishing that there is no genuine issue of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial.  <u>See</u> <u>id.</u> at 324.  "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial.  <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 841 (1st Cir. 1993) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).

"[T]he material creating the factual dispute must herald the existence of 'definite, competent evidence' fortifying the plaintiff's version of the truth.  Optimistic conjecture . . . or hopeful surmise will not suffice." <u>Hidalgo</u>, 120 F.3d at 338.  In addition, a plaintiff may not attempt to create an issue of fact by contradicting her prior deposition testimony.  <u>Morales</u>, 246 F.3d at 32.

The court must view the record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor.  <u>See</u> <u>O'Connor v. Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993).  "If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate."  <u>Walsh v. Town of Lakeville</u>, 431 F. Supp. 2d 134, 143 (D. Mass. 2006).

"Even in employment discrimination cases 'where elusive concepts such as motive or intent are at issue,' this standard compels summary judgment if the non-moving party 'rests

merely upon conclusory allegations, improbable inferences, and unsupported speculation.'"
Feliciano de la Cruz v. El Conquistador Resort and Country Club, 218 F.3d 1, *5 (1st Cir. 2000)
(citation omitted).

      B.    Disparate Treatment

      Gasperini brings gender discrimination claims both under Title VII and Massachusetts
law. Where, as here, the plaintiff has no direct evidence of discrimination, both federal and state
courts rely on the burden-shifting analysis set out in McDonnell Douglas Corp. v. Green, 411
U.S. 792 (1973), in determining whether the plaintiff has shown discrimination.[15] Feliciano de la
Cruz, 218 F.3d at 5. At the first step, Gasperini must adduce a prima facie case of discrimination
showing that (1) she was a member of a protected class, (2) she was performing her job at an
adequate level, and (3) she suffered an adverse employment action. Id.; see also Espinal v. Nat'l
Grid NE Holdings 2, LLC, 794 F. Supp. 2d 285, 292 (D. Mass. 2011).

      Once the plaintiff establishes a prima facie case, "the burden shifts to the employer to
articulate some 'legitimate, nondiscriminatory reason' for its employment action." Feliciano de
la Cruz, 218 F.3d at 5 (citing McDonnell Douglas, 411 U.S. at 802). "[T]he defendant must
clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if
believed by the trier of fact, would support a finding that unlawful discrimination was not the
cause of the employment action." Id. at 5-6. Once the employer offers a nondiscriminatory
reason for its action, the burden shifts back to the plaintiff to show that the reason proffered was
a pretext for the discriminatory decision. Id.

_____

[15] Because courts apply the same analysis to state and federal discrimination claims, this
Court will analyze Gasperini's claims collectively. See Frankina v. First Nat'l Bank of Boston,
801 F. Supp. 875, 880 (D. Mass. 1992).

In the context of a summary judgment motion, "the jurisprudence of Rule 56 takes hold

and the McDonnell Douglas burden-shifting standard framework must comport with the rule."

Mesnick v. General Electric Co., 950 F.2d 816, 824 (1st Cir. 1991).  As the First Circuit has

explained:

> If the plaintiff has failed to limn a prima facie case, the inference of
> discrimination never arises, and the employer's motion for summary judgment
> will be granted.  If the plaintiff has made his prima facie case, and the employer
> has not offered a legitimate, nondiscriminatory reason to justify the adverse
> employment action, then the inference of discrimination created by the prima case
> persists, and the employer's attempt to secure summary judgment should be
> rebuffed.  When the struggle has progressed to the third and final phase of
> burden-shifting, however, then the McDonnell Douglas framework falls by the
> wayside.  Because this phenomenon is much misunderstood, we pause briefly to
> explicate it.
>
> It is settled that the presumption arising from a discrimination plaintiff's
> prima facie case vanishes once the employer has articulated a legitimate,
> nondiscriminatory reason for dismissing the employee.  At that juncture, the
> ultimate question becomes whether, on all of the evidence of record, a rational
> factfinder could conclude that [gender] was a determining factor in the
> employer's decision.  That is to say, so long as the employer's proffered reason is
> facially adequate to constitute a legitimate, nondiscriminatory justification for the
> employer's actions, the trial court's focus in deciding a Rule 56 motion must be
> on the ultimate question, not on the artificial striations of the burden shifting
> framework.
>
> Put another way, under conventional summary judgment practice, a
> plaintiff must establish at least a genuine issue of material fact on every element
> essential to his case in chief.  Hence, in a case where the first two steps of the
> McDonnell Douglas pavane have been satisfactorily choreographed, a plaintiff
> must offer some minimally sufficient evidence, direct or indirect, both of pretext
> and of the employer's discriminatory animus to prevail in the face of a properly
> drawn Rule 56 motion.  Once the burden-shifting framework has run its course,
> we think that courts should not unduly complicate matters, whether on summary
> judgment or on motion for directed verdict at trial's end, 'by applying legal rules
> which were devised to govern the 'basic allocation of burdens and order of proof'
> in deciding this ultimate question.'

Id. at 824-25 (internal citations and footnotes omitted).

1.     *Gasperini Has Failed To Produce Evidence That She Was*
       *Subject To An Adverse Employment Action*

There is no dispute that as a female, Gasperini is a member of a protected class.  In addition, given the summary judgment record in this case, whether Gasperini was performing her job at a satisfactory level is a question of fact for a jury.  See Espinal, 794 F. Supp. at 292 ("Generally speaking, whether an employee is performing his job satisfactorily is a question of fact for the jury.").  Nevertheless, Dominion argues that Gasperini cannot establish a prima facie case of discrimination because she cannot show any adverse employment action.  Dominion Mem. at 7-9.  This Court agrees.

An adverse employment action is a "tak[ing] of something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities, or withhold[ing] from the employee an accouterment of the employment relationship."  Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996) (citations omitted).[16]  "The term is expansive enough to include . . . a suspension from work, although it perhaps does not include a mere verbal reprimand."  Espinal, 794 F. Supp. 2d at 293 (citation omitted).  The term is "one of art that carries a connotation not simply of workplace discipline, but of discipline unfairly (and discriminatorily) imposed."  Id.

Determining whether an action is materially adverse is a case-by-case inquiry and must be cast in objective terms.  Blackie, 75 F.3d at 725.  "Work places are rarely idyllic retreats, and

---

[16] While Blackie was a retaliation case brought under the Fair Labor Standards Act, the "fundamental meaning of 'adverse employment action' should remain constant regardless of the particular enabling statute, given their similar anti-discriminatory purpose."  Larou v. Ridlon, 98 F.3d 659, 663 n. 6 (1st Cir. 1996).

-18-

the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of materially adverse employment action." Id.

Gasperini claims that the following incidents and issues constituted adverse employment action: (1) her unequal access to bathroom and locker facilities; (2) Dominion's handling of the November 2006 bulldozer incident; (3) the fact that she was required to rewrite her Action Plan Questionnaire in connection with her Employment Day Discipline five times; and (4) the handling of the September 4, 2007 truck incident. The Court finds that none of Gasperini's complaints constitute an adverse employment action.

a.     *Bathroom And Locker Facilities*

First, Gasperini complains that she was denied the opportunity to eat with her coworkers who were all male. Gasperini Mem. at 7. Gasperini's male coworkers all took their twenty minute meal breaks together in the eating area of the men's locker room. Id. Gasperini was not allowed in the men's locker room because locker areas were segregated by sex. Id. If Gasperini was to eat at any other available lunch room, she would eat alone because there were no other females on her shift. Id. She claims that she was systemically isolated and excluded from her coworkers who were all male because Dominion failed to provide an eating area where she could join coworkers without the threat of being fired. Id.

Gasperini's claims do not support a finding of adverse employment action. Both women's and men's lockers had eating areas. PR 109. Accordingly, she cannot claim that women's locker facilities were somehow inferior to the men's locker facilities in that respect. In addition, Dominion provided a lunch room available to all employees with tables, chairs, sinks,

refrigerators, vending machines, microwaves and toasters.  PR 81.  Dominion cannot be faulted

if Gasperini's coworkers decided to eat in the men's locker room and not in the lunchroom.[17]

 In any event, Gasperini has provided no evidence that her inability to eat with coworkers

was an adverse employment action.  See, e.g., King v. City of Boston, 71 Mass. App. Ct. 460,

470 (2008) (reversing grant of summary judgment because plaintiffs presented evidence that the

denial of rank-specific locker facilities deprived them of a material feature of their employment);

Clapp v. Potter, 329 F. Supp. 2d 597, 600 (M.D.N.C. 2004) (denial of chosen lunch spot is not an

adverse employment action because plaintiff did not present any evidence that the right to eat

lunch at her chosen spot was a term or condition of employment).  She has not shown any

evidence that she was disciplined, demoted, or that her material conditions of employment were

affected in any way.  Her allegations that the Gatorade was located in the men's locker room and

that catered meals were sometimes provided in the men's locker room are too trivial to constitute

adverse employment action.  Although Gasperini testified that she ate in the men's locker room

whenever her coworkers would allow her, she was never disciplined for doing so.  PR 101.

 Similarly, Gasperini's complaints that the female bathrooms and lockers were inferior to

those provided to the men has no support in the record.  Gasperini complains that the bathroom

in the powerhouse locker was too far from her work area.  Gasperini Mem. at 8.  However, she

herself estimated that she spent the majority of her time (approximately 60%) working conveyor

---

[17] Gasperini claims that her inability to eat with her coworkers was significant because, during the meal breaks, "[m]ale coworkers would decide amongst themselves who would take overtime and to Ms. Gasperini's exclusion."  PS 137.  However, Gasperini has not cited to any competent evidence to support this claim or that such conduct took place in the men's locker room.  This statement comes from the deposition of Dr. Presser, Gasperini's doctor, who could have no personal knowledge regarding this issue.  Gasperini has not provided any evidence that her inability to eat in the men's locker room in any way impaired her career at Dominion.

up, which is inside the powerhouse where her locker is located.  Gasperini Dep., I. 36; II. 10, 52.

Nevertheless, when she complained about the distance from the coal pile to her locker,

Dominion gave her a key to a unisex supervisor's bathroom directly next to the men's locker

bathroom.  PR 111-112.  Her only complaint about the unisex bathroom is that it used to be a

male bathroom where a "unisex" sign was placed and that the presence of a urinal made her

uncomfortable.  PR 113.  Her discomfort with the facilities, without more, does not constitute an

adverse employment action.  See, e.g., Macklin v. Am. Sugar Refining, Inc., No. JFM-06-2567,

2007 WL 2815984, at * 1 (D. Md. Sept. 26, 2007) (defendant's provision of a unisex bathroom

that plaintiff believed to be "substandard and unclean" does not constitute disparate treatment);

Alseth v. Douglas County, No. 99-Civ-627, 2000 WL 34230127, at * 10 (W.D. Wis. June 23,

2000) (employer's conversion of the women's restroom into a unisex bathroom was not an

adverse employment action).

　　　　Gasperini also complains that the powerhouse locker was inferior to men's locker room

because it was too cold and because of other concerns.  Gasperini Mem. at 9.  However,

Gasperini does not dispute that Dominion then provided her with a space heater for the locker

and, when that was not sufficient to alleviate her complaints, they provided her access to the

supervisor's locker room.  PR 112-113.  She now claims that solution was not acceptable

because she was afraid that a male supervisor may walk in when she was taking a shower.  Id.

However, she does not dispute that supervisors were generally not at the plant during her shift.

PR 114.  Accordingly, Gasperini has not pointed to any evidence that she suffered an adverse

employment action with respect to bathroom and locker facilities.

b.      *The November 2006 Bulldozer Incident*

Gasperini also alleges that she suffered an adverse employment action in connection with the November 2006 bulldozer incident.  She complains that she was berated by Alfonso, her supervisor, and sent home.  Gasperini Mem. at 10.  She also complains that, as result of the incident, she was required to work during the first shift for one week so that her operation of the bulldozer could be observed by Dominion.  Id. at 10-11.  Gasperini claims that she felt upset and belittled and that her skills were called into question in front of her coworkers.  Id. at 11.  Finally, she complains that she received a memorandum on January 27, 2007 stating that Dominion had determined that Gasperini should have been able to operate the bulldozer on November 16, 2006.  Id.; PR 38.

Taking the facts in the light most favorable to Gasperini, the Court finds that this incident does not constitute an adverse employment action.  Although Gasperini alleges that she was "sent home," she does not allege that she suffered any change in salary, benefits, job responsibilities, or other material terms and conditions of her job.  Rather, she complains that Alfonso's conduct was demeaning.  She also claims that operating the bulldozer under observation was belittling. While the conduct alleged here may give rise to an inference that Gasperini's workplace was not an "idyllic retreat," Gasperini's allegations fail to constitute a material change in the terms, conditions or privileges of her job that would constitute an adverse employment action.  Accordingly, Gasperini has failed to set forth sufficient evidence to make out a prima facie case of discrimination.

c.      *The Action Plan Questionnaire*[18]

Gasperini argues that the incident where she had to revise her Action Plain Questionnaire answers five times was discriminatory.[19]  The Court disagrees.

Gasperini has not presented any evidence to show that having to rewrite the Action Plan Questionnaire five times before it was accepted was an adverse employment action.  Again, she has not alleged a loss in pay, promotion, reassignment of duties or any other tangible change in her conditions of employment.  Accordingly, the Court finds that she cannot prove that she suffered an adverse employment action in connection with the Action Plan Questionnaire.

d.      *The September 4, 2007 Truck Incident*

Finally, Gasperini claims that Dominion discriminated against her by investigating her for the September 4, 2007 incident where the truck that she was using was found to have diesel, instead of gasoline.  The Court finds that Gasperini has not pointed to any evidence that this incident constituted an adverse employment action.

Again, there is no evidence that Dominion took any adverse employment action against Gasperini during this incident.  An investigation of an employee, without more, in insufficient to constitute an adverse employment action.  See, e.g., Balderrama v. Kraft Foods North Am., Inc., 307 F. Supp. 2d 1012, 1014 (N.D. Ill. 2004); Blackden v. Stanley, No. 02-475-M, 2003 WL

---

[18] Dominion argues that Gasperini is collaterally estopped from bringing claims regarding her Employment Decision Day discipline.  Dominion Mem. at 16.  Gasperini grieved her Employment Decision Day discipline and lost at arbitration.  PR 55.  Dominion argues that the arbitrator's factual findings are binding in this case.  Dominion Mem. at 16.  Because the Court finds that Gasperini cannot prove that this incident was an adverse employment action, it need not address Dominion's collateral estoppel claim.

[19] At oral argument, counsel for Gasperini stated that she does not claim that the Employment Decision Day itself was discriminatory.

23100321, at *6 (D.N.H. Dec. 31, 2003); Rider v. Town of Farmington, 162 F. Supp. 2d 45, 52

(D. Conn. 2001).   Dominion did not fire, demote, suspend, or discipline Gasperini in any way.

Gasperini only alleges that Dominion investigated and interrogated her with respect to the

incident.  Accordingly, this Court finds that Dominion's investigation of Gasperini with respect

to this incident is not an adverse employment action.[20]

## IV.    CONCLUSION

Based on the summary judgment record, this Court finds that Gasperini has failed to

produce any evidence to show that she was subject to an adverse employment action and has

failed to set out a prima facie case of discrimination.  Accordingly, Dominion is entitled to

summary judgment on Gasperini's disparate treatment claims.

## V.    ORDER

For the foregoing reasons, this Court GRANTS Dominion's motion for summary

judgment and dismisses the complaint.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

---

[20] Gasperini argues that the investigation was discriminatory because her interrogation lasted longer than that of other male employees.  Gasperini Mem. at 17.  This argument appears to be a pretext argument.  However, if Gasperini cannot show an adverse employment action, then she has not established a prima facie case of discrimination and her case fails.  Mesnick, 950 F.2d at 824.  Even if she had established an adverse employment action, however, no reasonable jury could find Dominion's actions unreasonable given that Gasperini admits that the truck was in her custody and control around the time the damage occurred and that she fueled the truck on the date of the incident.  PR 68, 70.